IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PATRICK WAYNE BELL,<br>TDCJ #1190375, | §<br>§<br>§ | |
| Petitioner, | §<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. H-06-4113 |
| NATHANIEL QUARTERMAN, Director,<br>Texas Department of Criminal Justice -<br>Correctional Institutions Division, | §<br>§<br>§<br>§ | |
| Respondent. | §<br>§ | |

## MEMORANDUM AND ORDER

State inmate Patrick Bell (TDCJ #1190375) has filed a petition for a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge a state court felony conviction. The respondent has filed an answer, which argues that Bell is not entitled to relief. (Doc. # 15). Bell has filed a reply. (Doc. # 17). After considering all of the pleadings, the records, and the applicable law, the Court **dismisses** this case for reasons that follow.

## I.    BACKGROUND

Bell is presently in custody of the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ") pursuant to a criminal judgment of conviction in cause number 947386. A Harris County grand jury returned an indictment against Bell in that case, charging him with aggravated assault. The State enhanced that indictment for purposes of punishment with allegations that Bell had at least two prior felony convictions for delivery of a controlled substance and possession of a controlled substance.

On September 11, 2003, a jury in the 351st District Court of Harris County, Texas, found Bell guilty as charged in the indictment. The jury also found that the punishment allegations were true and sentenced Bell to serve thirty-two years in prison.

On direct appeal, Bell's appointed attorney filed a brief requesting leave to withdraw, commonly known as an "*Anders* brief," which advised that a professional evaluation of the record revealed no arguable ground for appeal.[1] Bell filed a *pro se* brief in response to his attorney's submission. In that brief, Bell complained that his indictment was untimely and that he was denied effective assistance of counsel at trial. The State filed an appellate brief that responded to each issue raised by Bell.

The intermediate court of appeals addressed the issues raised by Bell and affirmed the conviction in an unpublished opinion. *See Bell v. State*, No. 01-03-00973-CR, 2005 WL 174487 (Tex. App. — Houston [14th Dist.] Jan. 27, 2005). Bell filed a petition for discretionary review with the Texas Court of Criminal Appeals, complaining that he was denied effective assistance of counsel at trial. Bell also alleged, for the first time, that the evidence was legally and factually insufficient to support his conviction. The Texas Court of Criminal Appeals refused Bell's petition for discretionary review on August 31, 2005.

Bell challenged his conviction further by filing a state application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure. In that application,

---

[1]     *See Anders v. California*, 386 U.S. 738, 744 (1967) (holding that counsel appointed for an appeal may request leave to withdraw if he finds the appeal to be frivolous, but must first file a brief identifying "anything in the record that might arguably support the appeal").

Bell argued that the prosecutor engaged in misconduct by suborning perjured testimony.  Bell alleged further that he was denied effective assistance of counsel and that the trial court abused its discretion in violation of due process.  In a separate memorandum attached to his state application, Bell argued further that the evidence was insufficient to support his conviction.  The state habeas corpus court entered specific findings of fact and concluded that Bell was not entitled to relief on any of his claims.  The Texas Court of Criminal Appeals agreed and, based on the trial court's findings, denied Bell's application for a state writ of habeas corpus without a written order.  *See Ex parte Bell,* No. 65,349-01 (Aug. 23, 2006).

Bell now seeks a federal writ of habeas corpus under 28 U.S.C. § 2254.  Liberally construed, the petition and supporting memorandum present the same or similar claims as those raised by Bell in his state habeas corpus application and supporting memorandum.[2] (Docket Entry No. 1, *Petition and Supporting Memorandum*).  The respondent has filed an answer, arguing that Bell is not entitled to relief on any of his claims under the governing federal habeas corpus standard of review set forth below.

## II.    STANDARD OF REVIEW

---

[2]    The Court is mindful that the petitioner proceeds *pro se* in this case.  Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys.  *See Haines v. Kerner,* 404 U.S. 519, 521 (1972).  Under this standard, pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them.  *See id.* Affording a liberal construction as required, the Court has reordered the claims presented by Bell for purposes of analysis.

Federal review of the pending habeas corpus petition is subject to the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies to those habeas corpus petitions filed after its effective date of April 24, 1996). Embodying the principles of federalism, comity, and finality of judgments, the AEDPA "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 532 U.S. 1067 (2001). Specifically, the federal habeas corpus statutes amended by the AEDPA, codified at 28 U.S.C. § 2254(d), set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).

The federal habeas corpus statutes require applicants for relief to first present their claims in state court and to exhaust all state court remedies through proper adjudication. 28 U.S.C. § 2254(b). To the extent that the petitioner's claims were adjudicated on the merits in state court, the AEDPA standard applies. For claims adjudicated on the merits, the AEDPA provides that a petitioner is not entitled to relief unless the state court's ultimate decision:

1.  was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.  was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (observing

that the AEDPA standard is restricted to the reasonableness of the state court's "ultimate

decision, not every jot of its reasoning") (citation omitted), *cert. denied*, 535 U.S. 982

(2002).

Claims presenting pure questions of law and mixed questions of law and fact are

governed by § 2254(d)(1). *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*,

534 U.S. 885 (2001). The Supreme Court has clarified that "clearly established Federal law"

or precedent for purposes of § 2254(d)(1) "refers to the holdings, as opposed to the dicta,"

of decisions from the United States Supreme Court "as of the time of the relevant state-court

decision." *Carey v. Musladin*, — U.S. —, —, 127 S. Ct. 649, 653 (2006) (quoting *Williams

v. Taylor*, 529 U.S. 362, 412 (2000)). A state court decision is "contrary to" clearly

established precedent if the state court arrives at a conclusion opposite to one reached by the

Supreme Court on a question of law or if the state court decides a case differently from the

Supreme Court "on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-

13. A state court decision is an "unreasonable application" of clearly established precedent

if the state court identifies the correct governing legal principle from the Supreme Court's

decisions but unreasonably applies that principle to the facts of the petitioner's case. *Id.*

Questions of fact are governed by § 2254(d)(2) governs pure questions of fact. *See

Martin*, 246 F.3d at 475. In addition, a state court's factual findings are entitled to deference

on federal habeas corpus review and are presumed correct under 28 U.S.C. § 2254(e)(1),

unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v.*

*Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)).  This deference extends not only to express findings of fact, but to the implicit findings of the state court.  *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)).

The burden is on the petitioner to show that he is entitled to relief under the highly deferential AEDPA framework that controls this case.  *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002). Although he submits a lengthy memorandum in support of his petition, it is nearly identical to the one that he filed in state court.  (Doc. # 1).  The petitioner makes no specific effort to demonstrate that he merits relief under the AEDPA standard found in § 2254(d) by showing that the state court's decision to reject his claims was unreasonable or incorrect.  For this reason alone, the petitioner fails to establish that he is entitled to a federal writ of habeas corpus.  Nevertheless, applying the liberal construction required for *pro se* litigants, the petitioner's claims are discussed further below in light of the applicable law.

## III.   DISCUSSION

### A.     Sufficiency of the Evidence

Bell contends that the evidence was insufficient to support his conviction for aggravated assault.  The record shows that Bell did not present a challenge to the sufficiency of the evidence until he filed his petition for discretionary review with the Texas Court of Criminal Appeals.  The Texas Court of Criminal Appeals refused to consider the merits of

those claims. Bell attempted to raise a challenge to the sufficiency of the evidence in his state habeas corpus memorandum, but the reviewing court found that his claim was "not cognizable" on collateral review. *See Ex parte Bell*, No. 65,349-01 at 120 (citing *Ex parte McClain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994)). The respondent argues that, because Bell failed to challenge the sufficiency of the evidence on direct appeal, his claim is barred by the doctrine of procedural default.

The record confirms that Bell did not challenge the sufficiency of the evidence on direct appeal when he should have. As the respondent correctly notes, Texas law requires challenges to the sufficiency of the evidence to be raised on direct appeal. *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004). The Fifth Circuit has found that a petitioner's failure to present his evidentiary insufficiency challenge properly on direct appeal constitutes a procedural default that is based on an adequate and independent state law ground. *See Coleman v. Quarterman*, 456 F.3d 537, 546 (5th Cir. 2006).

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). It is the petitioner's burden to show that the "independent and adequate" state procedural rule at issue is not firmly established and regularly followed, or that it was capriciously applied under the circumstances. *See Wright*

7

*v. Quarterman*, 470 F.3d 581, 586 (5th Cir. 2006) (citations omitted).  Bell does not meet

that burden here.  Bell further fails to establish that any exception to the doctrine of

procedural default applies.[3]  Therefore, his claim concerning the sufficiency of the evidence

is procedurally barred from federal review.

Alternatively, the respondent argues that Bell's challenge to the sufficiency of the

evidence is without merit.  On federal habeas corpus review, the evidentiary sufficiency of

a state court conviction is governed by the legal standard found in *Jackson v. Virginia*, 443

U.S. 307 (1979).[4]  *See Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005) (citing *West v.*

*Johnson*, 92 F.3d 1385, 1394 (5th Cir. 1996), *cert denied*, 520 U.S. 1242 (1997)).  This

standard requires only that a reviewing court determine "whether, after viewing the evidence

in the light most favorable to the prosecution, any rational trier of fact could have found the

---

[3]    Exceptions to the procedural bar exist where the petitioner demonstrates either cause for the default and actual prejudice as a result of the alleged violation of federal law or that failing to consider his claim will yield a fundamental "miscarriage of justice." *Coleman*, 501 U.S. at 750.  Bell does not satisfy any exception in this instance.

[4]    To the extent that Bell attempts to challenge the factual sufficiency of the evidence, the respondent correctly notes that such a claim is not cognizable on federal habeas corpus review.  A federal habeas corpus court reviewing a petition under 28 U.S.C. § 2254 asks only whether a constitutional violation infected the petitioner's state trial.  *See Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir.), *cert. denied*, 510 U.S. 1025 (1993). Under Texas law, evidence is factually insufficient as a matter of law if the proof adduced at trial does not conform to the jury charge.  *See Brown v. Collins*, 937 F.2d 175, 176 (5th Cir. 1991).  This determination is one based on state evidentiary law and, therefore, presents no issue of "constitutional caliber."  *Id.*; *see also Pemberton*, 991 F.2d at 1223 (explaining that state evidentiary law "has no effect on our review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution").  Thus, Bell's conviction for aggravated assault need only satisfy the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979), which is set forth above.

essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  In conducting that review, a federal habeas corpus court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the prosecution.  *See Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995).

The indictment alleged that, on September 13, 2001, Bell committed aggravated assault by threatening an undercover police officer with imminent bodily injury by using and exhibiting a deadly weapon, namely, a firearm.  *See Clerk's Record* at 36.  A person commits the offense of assault in Texas if he intentionally or knowingly threatens another with imminent bodily injury.  *See* TEX. PENAL CODE ANN. § 22.01(a)(2) (Vernon Supp. 2006). A person commits the offense of aggravated assault if he uses or exhibits a deadly weapon during the commission of an assault.  *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (Vernon Supp. 2006).  A deadly weapon is "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17) (Vernon Supp. 2006).

Although the state court of appeals was not presented with a challenge to the sufficiency of the evidence, it made the following factual summary of the evidence introduced at trial, which details the aggravated assault by Bell on two undercover police officers:

> One night in September of 2001, two undercover Houston Police narcotics officers went to the Poolside Motel to buy drugs.  Officer Fisher, the complainant, and his partner Officer Massey were working with a tactical team

and were backed up by uniformed officers.  Fisher and Massey were not wired for transmission and did not have a radio with them, but they were carrying their guns under their clothes.

The police department had received several complaints about drug deals being conducted in room 116 of the Poolside Motel.  On their way to the room, Fisher and Massey walked through a parking lot where a group of people were standing and talking.  Before reaching the motel room door, the officers stopped to speak with a woman, apparently a prostitute.  After speaking to the woman, they knocked on the door of room 116.  There was no answer at the door, and the room appeared vacant to the officers.  Fisher and Massey turned to leave the motel.

The group of people were still standing in the parking lot when Massey and Fisher came back.  Fisher heard the group saying to Massey and him, "Hey, the law's got to get out of here.  Five-O, Five-O."  The officers did not stop to speak with the group, but continued to walk through the parking lot.  However, Fisher apparently yelled, "We ain't the law."  At some point, before the officers left, Fisher dropped a beer can he was carrying.  He noticed that the crowd suddenly became quiet.  Massey told Fisher to look over his shoulder to see what was happening.  Fisher saw [Bell] carrying a chrome pistol in his hand running towards Massey and him.  Fisher cried, "Gun," to Massey.  Fisher tried to hide around the corner of a building, while Massey ran down the street.  Fisher testified that he "went to the corner . . . because I was afraid [Bell] was going to come up and try to shoot me and my partner."

Once Fisher was behind the corner, he drew his gun.  When he looked around the corner towards the direction of [Bell], he saw a second man coming towards him.  The second man, [Trellis] Moses, fired a gun several times in Fisher's direction.  Fisher returned fire, hit Moses in the chest area, and then ducked back around the corner.  When Fisher looked back, he saw [Bell] heading towards Massey, pointing the gun at Massey.  Fisher shot at [Bell], who fell to the ground.  Fisher then saw [Bell] toss the chrome gun away, towards the parking lot.

Not knowing whether [Bell] had been shot, Fisher came up to him and told him to show his hands.  [Bell] did not.  Fisher testified that he was afraid [Bell] had another weapon and was not showing his hands as a ploy to get him into the open.  At this point he was "scared, really, really scared" and believed he was going to be shot.  He kicked [Bell], striking him in the face.  [Bell] did not have another gun.

10

Upon hearing the gunshots, the police officers who were acting as back-up for Massey and Fisher went to the motel.  [Bell], Moses, and a woman were arrested.  [Bell] and Moses were transported to the hospital to be treated for their wounds.

*Bell v. State*, No. 01-03-00973-CR, slip op. at 2-4 (Tex. App. — Houston [14th Dist.] Jan. 27, 2005, pet. ref'd).  The state court's factual findings are presumed correct and Bell does not meet his burden to refute those findings with clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

According to the pleadings, Bell concedes that he and Trellis Moses chased the undercover officers while brandishing loaded firearms.  Although the testimony shows that the officers were leaving the motel at the time, Bell claims that he drew his weapon and pursued the officers in "self-defense."  Bell did not testify on his own behalf or present this theory at trial.  As discussed further below, Bell fails to show that self-defense applied in his case or that he was entitled to a jury instruction on that issue, as he claims.  Based on its independent review of the trial record, this Court concludes that a rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt.  Because Bell fails to show that his conviction was supported by insufficient evidence in violation of the *Jackson v. Virginia* standard, he is not entitled to relief on this issue.

### B.    Prosecutorial Misconduct

In two related grounds for relief, Bell complains that his conviction was obtained by use of perjured testimony and that the State's knowing use of "fabricated evidence" constituted prosecutorial misconduct.  Bell claims that both undercover officers involved in

11

the incident (Officer Fisher and Officer Massey), as well as the State's firearms expert (Kim Downs) testified falsely at trial.  Bell insists, therefore, that the prosecutor suborned perjury or failed to correct misleading testimony.  The state habeas corpus court rejected Bell's claim, finding that he "failed to allege sufficient facts which, if true, would show that his conviction was obtained by perjured testimony." *Ex parte Bell*, No. 65,349-01 at 119 (citing *Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex. Crim. App. 1985)).

The State denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.  *Giglio v. United States*, 405 U.S. at 153; *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir.), *cert. denied*, 519 U.S. 995 (1996). "To establish a due process violation based on the government's use of false or misleading testimony, the defendant must show (1) that the witness's testimony was actually false, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false." *Fuller v. Johnson*, 114 F.3d 491, 496 (5th Cir.) (citing *Giglio*, 405 U.S. at 153-54), *cert. denied*, 522 U.S. 963 (1997).  Bell's primary allegations against Officer Fisher, Officer Massey, and Kim Downs, are summarized briefly below along with the actual testimony given at trial.

Bell complains that Officer Massey committed perjury when he told the jury that he saw Trellis Moses fire his weapon.  *See Court Reporter's Record*, vol. 4, at 51.  Bell points out that Officer Massey also testified that, when the shooting started, he had his back to both suspects.  *See id*. at 48.  Bell reasons that Officer Massey must be lying because, if both suspects were behind him, Officer Massey could not have seen Moses fire his weapon.  As

the respondent notes, Bell has taken Officer Massey's testimony out of context.  Officer Massey testified that he heard shots before he could "get turned around," but that once shots were fired Officer Massey turned and saw both Bell and Moses pointing guns in the officers' direction at which point he returned fire at Trellis Moses.  *See id*. 48-51.  Thus, Bell fails to show that Officer Massey's testimony on this issue was false or misleading.

Bell complains further that Officer Massey gave conflicting statements about whether he knew who shot at him.  Officer Massey testified on direct examination that he could not say for sure whether both Bell and Moses fired their weapons.  *See Court Reporter's Record*, vol. 4, at 36.  Officer Massey added, however, that he knew that at least one of the guns had been fired.  *See id*.  On cross-examination Officer Massey clarified that he saw Trellis Moses fire his weapon.  *See id*. at 51.  This does not establish false or misleading testimony.

Bell also complains that Officer Fisher misled the jury about where Officer Massey was standing when the shots first rang out.  Bell points to a portion of the testimony in which Officer Fisher stated that he fired his weapon at Bell, who had a gun and was approaching Officer Massey, because Officer Massey was in an open area where there was "no real cover."  *Court Reporter's Record*, vol. 3, at 95.  Bell claims that Officer Massey gave conflicting accounts about where he was standing when the gunfire erupted.  Officer Massey testified that he and Officer Fisher were leaving the scene when he heard Officer Fisher yell "gun."  *Court Reporter's Record*, vol. 4, at 34.  Officer Massey "turned and looked and saw two guys with guns running at us."  *Id*.  Officer Fisher "grabbed the only building corner around, something to hide behind," leaving Officer Massey "kind of stuck out in the middle

13

of the parking lot." *Id.* Officer Massey testified that he moved behind a raised ("four-foot

tall") flowerbed because that was the only cover available. *Court Reporter's Record*, vol.

4, at 43. In doing so, Officer Massey explained that he was in the line of fire and that he was

afraid he would be "shot in the head" by the approaching gunmen, both of whom were

pointing firearms at him. *Id.* at 44. Bell fails to show how there was any false or misleading

testimony given about Officer Massey's position.

Bell complains further that the State's firearms expert, Kim Downs, committed

perjury when she testified that Trellis Moses fired his gun on the night in question,

September 13, 2001. Downs testified that she tested the weapons and cartridge casings

recovered  from the scene and determined that the guns belonging to Moses and Bell had

been fired, although Bell's weapon had jammed. *Court Reporter's Record*, vol. 3, at 215-19,

226. Downs conceded on cross-examination that she was not present at the scene that night

and that she could not tell that the weapons had been fired on the night in question. *See id*.

at 234. Downs noted, however, that the weapons had been fired and that shell casings from

the weapons were found at the scene. *See id*. There is nothing false or misleading about

Downs's testimony.

The Court has reviewed the transcripts of the trial proceeding. The discrepancies or

inconsistencies referenced by Bell are so insubstantial at best. To the extent that there was

an inconsistency in any of the statements referenced by Bell, it is well established that

"[c]onflicting or inconsistent testimony is insufficient to establish perjury." *Kutzner v.*

*Johnson*, 242 F.3d 605, 609 (5th Cir. 2001) (citing *Koch v. Puckett*, 907 F.2d 524, 531 (5th

Cir. 1990)).  Rather, contradictory trial testimony merely establishes a credibility question

for the jury.  *Koch*, 907 F.2d at 531 (citing *Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988)

(inconsistencies in witnesses' testimony at trial are to be resolved by trier of fact and do not

suffice to establish that certain testimony was perjured)).  Moreover, even if there were

discrepancies in the testimony, the record reflects that Bell's counsel conducted a full cross-

examination of each of the State's witnesses and that he did an exceptional job at exploring

the issues and clarifying their testimony.

Bell has failed to show that State's witnesses committed perjury or that any of the

testimony given was false.  Because Bell has not established that any portion of the

testimony was false or misleading, he fails to show that the state court's conclusion was

contrary to, or involved an unreasonable application of, clearly established Supreme Court

precedent.  Therefore, Bell is not entitled to federal habeas corpus relief on this issue.

### C.     Ineffective Assistance of Counsel

Bell complains that he was denied effective assistance of counsel when his trial

attorney, Randall J. Ayers, failed to do the following: (1) to request a jury instruction on the

issue of self-defense; (2) to investigate the theory of self-defense; (3) to call eye witnesses

in support of a theory of self-defense; and (4) to object to the perjured testimony sponsored

by the State.  The state habeas corpus court rejected Bell's claims, concluding that Bell failed

to show that his counsel's performance was deficient or that there is a reasonable probability

that the result of the proceeding would have been different.  *Ex parte Bell*, No. 65,349-01

at 120 (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (citations omitted)).

The Supreme Court has recognized that the Sixth Amendment guarantees criminal defendants the effective assistance of counsel at trial. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). To establish ineffective assistance of counsel in violation of the Sixth Amendment, a defendant must satisfy the two-prong test established by *Strickland v. Washington*, 466 U.S. 668 (1984) by demonstrating both of the following: (1) that his counsel's performance was deficient; and (2) that the deficiency prejudiced his defense. Failure to prove either prong of the *Strickland* test will defeat an ineffective-assistance claim. *See Leal v. Dretke*, 428 F.3d 543, 548 (5th Cir. 2005) (citing *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998)).

To establish deficient performance under the *Strickland* test, the petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption  that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689), *cert. denied*, 543 U.S. 1056 (2005). Performance is prejudicial only if, but for counsel's errors, there is a reasonable probability that the final result would have been different and confidence in the reliability of the verdict has been undermined. *See Leal*, 428 F.3d at 548 (citing *Little v. Johnson*, 162 F.3d 855, 860-61 (5th Cir. 1998)). The petitioner fails to demonstrate that his

16

counsel's performance was deficient or that he was actually prejudiced as a result for reasons discussed in more detail below.

### 1.      Failure to Request a Jury Instruction on Self-Defense

Bell contends that his counsel was deficient because he failed to request a jury instruction on the issue of self-defense.  The state habeas corpus court rejected this claim specifically and found that Bell failed to allege facts which, if true, would show that his counsel was ineffective for failing to request an instruction on that proposed theory.  *See Ex parte Bell*, No. 65,349-01 at 120 (citing *Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex. Crim. App. 1985)).

Although Bell concedes that he did not testify on his own behalf, he insists that there was other evidence in the record that would have supported a jury instruction on the issue of self-defense.  As support for his theory of self-defense, Bell points to testimony from Benedetta Arlene Johnson, who was with Bell and Moses at the Poolside Motel on September 13, 2001, when the shootout occurred.   Johnson testified that the officers approached them and were nice at first, describing them as flirtatious, but that they were "real antagonistic" towards her as they were leaving the premises.  *Court Reporter's Record*, vol. 4, at 71.  When asked whether anybody made any threats, Johnson replied "No, there was not." *Id.*  Johnson testified that, as they were leaving, one of the police officers threw down a "40 ounce beer bottle" that landed at her feet. *Id.* at 72.  She said she "felt threatened" by this officer's action. *Id.*  According to Johnson, Bell and Trellis Moses went back to their motel room, where they apparently armed themselves, and then began to chase

after the officers, who "were like halfway down the drive[.]" *Id.* at 74.  Johnson states that, when the officers saw Bell and Moses approach, "they looked and they started running." *Id.*

In Texas, "a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a).  A person is justified in using deadly force only if: (1) he would be justified in using force under § 9.31; (2) if a reasonable person in the actor's situation would not have retreated; and (3) when and to the degree he reasonably believes the deadly force is immediately necessary: (A) to protect himself against the other's use or attempted use of unlawful deadly force; or (B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery." TEX. PENAL CODE ANN. § 9.32(a).  A person is justified in using force or deadly force against another to protect a third person if: (1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 or 9.32 in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and (2) the actor reasonably believes that his intervention is immediately necessary to protect the third person." TEX. PENAL CODE ANN. § 9.33.

Johnson's testimony is consistent with the testimony given by Officer Massey and Officer Fisher, who both stated that they were leaving the motel when Bell and Moses came running up to them from behind with weapons drawn.  Both officers had their backs turned.

Bell does not allege any facts showing that he was in fear or that he reasonably believed that his conduct was immediately necessary to protect himself.  Bell's allegations, and Johnson's testimony, do not demonstrate that self-defense was justified under the circumstances. Likewise, Johnson's testimony does not raise an issue about whether Bell reasonably believed that force was necessary in defense of a third person.  Because Bell fails to demonstrate that he had any viable claim of self-defense or defense of another, he fails to show that he was entitled to a jury instruction on that issue.  Absent a showing that Bell was entitled to a jury instruction on this defense, he does not show that his counsel's performance was deficient, or that he was actually prejudiced as a result.

### 2.    Failure to Investigate or Present a Theory of Self-Defense

In two related claims, Bell contends that his counsel was deficient because he failed to investigate or to call witnesses on the issue of self-defense.  A habeas corpus petitioner who alleges a failure to investigate on the part of his counsel must state with specificity what the investigation would have revealed and how it would have changed the outcome of his trial.  *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)).  In this instance, Bell contends that his counsel was deficient because he failed to call eye witnesses in support of Bell's theory of self-defense. Bell identifies witnesses Michael Ray Kimble and Willie Edison as two individuals who would have stated that the police officers shot first.

The Fifth Circuit has emphasized that "[c]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have

testified are largely speculative. (citation omitted.) Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) (quoting *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir.1986), and citing *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985); *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir.1984); *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir.1983); and *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir.1978)). To demonstrate the required *Strickland* prejudice on a claim of ineffective assistance in this context, a petitioner "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).

Bell fails to present an affidavit or other sworn account from any of the witnesses he claims that his counsel should have called.[5] Absent affidavits (or similar matter) from the proposed witnesses, the petitioner's claim is speculative and conclusory, and does not demonstrate either deficient performance or resulting prejudice on his trial counsels' part. *See Sayre*, 238 F.3d at 636. Moreover, Bell does not allege or show that either witness would have testified in this case if they had been called by the defense. *See Evans*, 285 F.3d

---

[5] There are unsworn statements from Mr. Kimble and Mr. Edison in the record that were provided in connection with the investigation. (Doc. # 1, Exhibits). Although Edison reports that he saw the officers exchange fire with two black males, both Edison and Kimble describe the two black males (Bell and Moses) as running after the officers with guns drawn as the officers were trying to leave the parking lot. Because they support the testimony given by the officers, the statements are as harmful as they are potentially helpful to Bell.

at 377.   Accordingly, Bell fails to show that his counsel was ineffective for failing to
investigate or to call these witnesses at trial.

### 3.       Failure to Object

Bell contends that his counsel was deficient because he failed to object to the perjured
testimony sponsored by the State.   The state habeas corpus court specifically rejected this
claim and found that Bell failed to overcome the presumption that trial counsel's decision
not to object was made in the exercise of reasonable professional judgment. *Ex parte Bell*,
No. 65,349-01 at 120 (citing *Delrio v. State*, 840 S.W.2d 433, 445 (Tex. Crim. App. 1992)).
This claim is without merit.

For reasons set forth above, Bell has not shown that the disputed testimony was false
or misleading.   Likewise, Bell has not shown that his counsel had a meritorious objection to
make.   "Failure to raise meritless objections is not ineffective lawyering; it is the very
opposite."   *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).   Absent a showing that
counsel failed to raise a meritorious objection and that the outcome would have been
different, the petitioner fails to demonstrate deficient performance or actual prejudice. *See
Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not
deficient in failing to present a meritless argument) (citation omitted); *Smith v. Puckett*, 907
F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue
from, failure to raise a legally meritless claim."); *Lavernia v. Lynaugh*, 845 F.2d 493, 499
(5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.")
(citations omitted); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not

required to engage in the filing of futile motions."). Absent a showing that Bell's counsel unreasonably failed to make a meritorious objection, he fails to show to show that his attorney was deficient or that he was actually prejudiced as a result.

After reviewing the entire record, Bell fails to show that he received ineffective assistance of counsel at his trial. As a result, Bell has failed to demonstrate a valid claim for ineffective assistance of counsel and he has further failed to show that the state habeas corpus court's decision to reject this claim was contrary to, or involved an unreasonable application of, the *Strickland* standard. It follows that Bell is not entitled to federal habeas corpus relief on this issue.

### D.     Trial Court's Abuse of Discretion

Finally, Bell complains that the trial court abused its discretion and violated his right to due process by excluding a police officer witness and evidence in the form of police department records, by refusing to include a jury instruction on the issue of self-defense, and by denying or interfering with his counsel's cross-examination. The state habeas corpus court rejected Bell's due process claim, finding that it was "procedurally barred" as the result of Bell's failure to present these issues on direct appeal. *See Ex parte Bell*, No. 65,349-01 at 119 (citing *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1998)). The respondent argues, therefore, that these claims are procedurally barred from federal habeas corpus review.

The record confirms that Bell did not complain about an abuse of discretion or any of the trial court's rulings on direct appeal. Bell's failure to present this argument properly

22

constitutes a procedural default.  *See Soria v. Johnson*, 207 F.3d 232, 249 (5th Cir.) (citing *Ex parte Gardner*, 959 S.W.2d 189 (Tex. Crim. App. 1998) as the source of a procedural bar), *cert. denied*, 530 U.S. 1286 (2000); *Finley v. Johnson*, 243 F.3d 215, 219 (5th Cir. 2001); *see also Gardner,* 959 S.W.2d at 199 (holding that the applicant had an opportunity to raise his due process claims on direct appeal and that his failure to present them constituted a procedural default).  Bell fails to show that he fits within a recognized exception to the doctrine of procedural default.  Therefore, the Court concludes that his due process claim is barred from federal habeas corpus review.

Alternatively, the respondent argues that Bell's due process claims fail as a matter of law.  The state habeas corpus court found "[i]n the alternative and without waiving the foregoing [procedural bar]," that Bell failed to allege sufficient facts which, if true, would show that the trial court abused its discretion.  *See Ex parte Bell*, No. 65,349-01 at 119 (citing *Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex. Crim. App. 1985)).  The facts alleged by Bell in this instance, which are set forth in his supporting memorandum, likewise fail to demonstrate a constitutional violation in connection with any of the trial court's rulings.

As an initial matter, Bell cannot show that he is entitled to federal habeas corpus relief by complaining that the trial court's rulings violated state law.  Even assuming there was an error, "federal habeas corpus relief does not lie for errors of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Accordingly, a federal habeas corpus court will not grant relief from

errors in a state trial court's rulings, if any, unless those errors result in a "denial of fundamental fairness" under the Fourteenth Amendment Due Process Clause. *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) (citing *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983), *cert. denied*, 466 U.S. 984 (1984)).

Although Bell alleges that the trial court's rulings in this instance violated his right to due process, he fails to provide specific facts in support of his claim.[6] His conclusory allegations do not present an issue for federal habeas corpus review. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (although *pro se* petitions for collateral review are entitled to a liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue") (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value."). Based on this record, Bell fails to demonstrate that any ruling by the trial court rose to the level of a constitutional violation. Therefore, Bell is not entitled to federal habeas corpus relief.

## IV.    CERTIFICATE OF APPEALABILITY

---

[6]    Bell's rambling allegations are presented in his unpaginated supporting memorandum, which is attached to the petition. (Doc. # 1). Bell complains that the trial court erred by excluding testimony from Sergeant William Fisher, and evidence in the form of Officer Fisher's personnel file, but Bell fails to show that the proposed testimony and evidence was relevant or otherwise admissible. Bell complains that the trial court erred by including a jury instruction on the issue of self defense. As discussed previously, however, Bell has failed to show that he was entitled to a jury instruction on that issue. Bell alleges that the trial court somehow interfered with his counsel's cross-examination of Officer Fisher and Officer Massey, but he does not detail how the ruling hampered his counsel's questioning.

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would

find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529

U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring

further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

For all of the reasons discussed above, the Court concludes that jurists of reason would not

debate whether any procedural ruling in this case was correct or whether the petitioner stated

a valid claim of the denial of a constitutional right.  Therefore, a certificate of appealability

will not issue.

## V.    CONCLUSION AND ORDER

Based on the foregoing, the court **ORDERS** as follows:

1.    The petitioner filed a timely reply to the respondent's answer in this case.
      Therefore, his pending motion for an extension of time to file a reply (Doc.
      # 18) is **MOOT**.

2.    The petition for a writ of habeas corpus (Doc. # 1) is **DENIED**, and this case
      is **DISMISSED** with prejudice.

3.    A certificate of appealability is **DENIED**.

The Clerk will provide copies of this order to the parties.

SIGNED at Houston, Texas, on July 27th, 2007

Nancy F. Atlas
United States District Judge

26